FILED

2008 Jan-09  PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| JENNIFER SNEED, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-06-S-1229-NW |
| | ) | |
| TVA BOARD OF DIRECTORS, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Jennifer Sneed, filed this action against her employer, the Board of Directors of the Tennessee Valley Authority ("TVA"),[1] asserting claims for race discrimination, retaliation, sex discrimination, and a racially hostile work environment, all under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").[2] Defendant moved for summary judgment on all of plaintiff's claims.[3] Upon consideration of defendant's motion, the parties' briefs, and the evidentiary submissions, the court concludes the motion should be granted in part and denied in part.

---

[1] For cases against the federal government as an employer, "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c); *see also, e.g., Mullins v. Crowell,* 228 F.3d 1305, 1309 n.8 (11th Cir. 2000) (disability discrimination suit against TVA under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*).

[2] Doc. no. 23 (Second Amended Complaint).

[3] Doc. no. 25.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in the part pertinent here, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks

and citations omitted).

## II.  SUMMARY OF RELEVANT FACTS

The facts of the case derive primarily from the record of TVA's administrative

proceedings.[4]  The parties do not contest most of the relevant facts;[5] instead, their

---

[4]TVA did not conduct any discovery after this case was filed.  *See* doc. no. 19 (plaintiff's evidentiary submission), Exhibit 1 (Affidavit of Jennifer Sneed), at ¶ 1.  Plaintiff also relies primarily upon the administrative record, although she did submit one deposition transcript and several affidavits.

[5]Appendix II to the Uniform Initial Order provides the following with regard to responding to an opposing party's statement of facts in a summary judgment context:

> **a.      Response to Movant's Statement**
>
> The first section must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts.  The non-moving party's response to the moving party's claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts.  Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based.  *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

Doc. no. 6 (Uniform Initial Order), at 16-17 (emphasis in original).  Similarly, the moving party's reply, if any, must consist of

> the moving party's disputes, if any, with the non-moving party's additional claimed undisputed facts.  The moving party's response to the non-moving party's additional claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the non-moving party's additional claimed undisputed facts.  Any statements of fact that are disputed by the moving party must be followed by a specific reference to those portions of the evidentiary record upon which the disputation is based.  *All additional material facts set forth in the statement required of the opposing parties will be deemed to be admitted for summary judgment purposes unless controverted by the statement of the movant.*

*Id.* at 18 (emphasis in original).

Plaintiff responded to only one of TVA's proposed undisputed facts, disputing only whether

dispute is over how those facts should be interpreted in light of the relevant law.

Plaintiff Jennifer Sneed, an African-American female,[6] worked at all times relevant to this case as a custodian for defendant Tennessee Valley Authority ("TVA").  Plaintiff first contacted a TVA Equal Employment Opportunity ("EEO") Counselor with a complaint of job-related discrimination on September 20, 2005.  On the form memorializing plaintiff's contact with the EEO office, the EEO Counselor checked boxes indicating that the bases for the alleged discrimination were race and reprisal.  There was no separate box to check for harassment.[7]  The EEO Counselor's description of the issues on which plaintiff was counseled included several actions plaintiff felt that TVA supervisory employees took "to discriminate against her because of [her] race (Black) and Reprisal."[8]  The statement of issues also included plaintiff's opinions that actions were taken "as another means of retaliation and harassment because of . . . suspicions of my being in the EEO process," and as "another means of harassment and intimidation."[9]  Plaintiff also informed the EEO

---

her administrative complaints should be construed to encompass claims for non-harassment-based race or sex discrimination.  *See* doc. no. 17 (plaintiff's brief), at 6.  TVA, in its reply brief, did not reply to any of plaintiff's separately enumerated proposed undisputed facts.  *See* doc. no. 21 (defendant's reply brief).  Accordingly, all of the factual allegations stated in the parties' briefs — other than the one allegation that was partially disputed by plaintiff — will be deemed admitted for summary judgment purposes.

[6] Sneed Affidavit, at ¶ 30.

[7] Sneed Affidavit, Attachment B, at 1-2.

[8] *Id.* at 2, 4-5.

[9] *Id.* at 2,4.

Counselor she felt like her supervisors were "harassing" and "retaliating against" her, and that some of her supervisors' actions constituted "differential treatment."[10]

The EEO Counselor informed plaintiff, by means of a letter dated October 24, 2005, that she was "entitled to file a discrimination complaint based on race and/or reprisal."[11]   Plaintiff filed an "Equal Employment Opportunity Complaint" on November 2, 2005.[12]   The complaint form contained the subtitle "Complaint of Discrimination Because of Race, Color, Religion, Sex, National Origin, Age, and/or Physical Disability, or Reprisal."[13]  Plaintiff checked boxes on the complaint form to indicate that she had been discriminated against on the basis of race and reprisal.  She was not represented by counsel in filing the EEO complaint.[14]

TVA sent plaintiff a letter on February 15, 2006, "concerning [her] complaint of alleged discrimination filed on November 2, 2005."[15]  The letter stated that

> the issues presented for investigation and a final decision on the merits are your claims that you were subjected to harassment (non-sexual) in your employment as a Custodian at the TVA's Colbert Fossil Plant when because of:
>
>     1.      your race (Black) management took no action when you

---

[10]*Id.* at 4-5.

[11]Sneed Affidavit, Attachment C (October 24, 2005 letter), at 1.

[12]Sneed Affidavit, at Attachment D.

[13]*Id.* at 1.

[14]*Id.*

[15]Sneed Affidavit, Attachment H (February 15, 2006 letter), at 1.

reported that an employee was insubordinate and disrespectful to you when you attempted to discuss work performance issues with her on or about May 24, 2005;

2. your race (Black) management demoted you from Custodial Supervisor to Custodian on or about June 10, 2005;

3. your race (Black) management allowed an employee to remain in your work area without your permission from on or about June 13, 2005 through about September 2005;

4. your race (Black) management took no action when you reported that an employee had placed an offensive object on your automobile on or about June 13, 2005;

5. your race (Black) management took no action when an employee placed in your work area a poster of a cat with an offensive message on or about September 9, 2005;

6. your race (Black) and reprisal (current equal employment opportunity EEO counseling) management questioned you regarding your whereabouts after you returned from a meeting with the EEO Counselor on or about September 20, 2005;

7. your race (Black) and reprisal (current EEO counseling) management did not inform you of your duties as the designated dual rate foreman in the absence of the foreman on or about September 27 and 28, 2005;

8. your race (Black) and reprisal (current EEO complaint) when you received a letter of warning for insubordination on or about December 2, 2005;

9. reprisal (current EEO complaint) management allowed your supervisor to discuss your personal health issues in

-6-

the staff's safety meeting on or about January 20, 2006;

10. reprisal (current EEO complaint and opposition to discriminatory practices) management accused you of threatening your supervisor with harm on or about February 2, 2006; and

11. reprisal (current EEO complaint and opposition to discriminatory practices) management suspended you from work and pay status for three days from February 22, 2006 through February 24, 2006, by letter dated February 14, 2006.[16]

There is no indication in the record that TVA ever took any further action with regard to plaintiff's initial complaint.[17]

Plaintiff lodged a second internal EEO complaint a few months later. She first contacted the EEO office on April 5, 2006 regarding the second complaint.[18] On the form memorializing plaintiff's contact, the EEO Counselor checked boxes indicating that the bases for the alleged discrimination were race, sex, and reprisal. There was no separate box to check for harassment.[19] The EEO Counselor's description of the issues on which plaintiff was counseled included several actions by plaintiff's

---

[16]*Id.* at 1-2.

[17]Plaintiff's original complaint in this case did state that "more than 180 days have passed since the filing of [plaintiff's first internal EEO complaint] and no final action has been taken by TVA in this matter." Doc. no. 1 (Complaint), at ¶ 9. 42 U.S.C. § 2000e-16(c) provides that a federal employee may file a civil action in an appropriate United States District Court if the agency fails to take action on her internal complaint within 180 days of when it was submitted. *See also Brown v. General Services Administration,* 425 U.S. 820, 832 (1976).

[18]Sneed Affidavit, Attachment K, at 1.

[19]*Id.* at 2.

supervisor that she alleged constituted discrimination "based on reprisal."[20]  Plaintiff also stated that she was "discriminated against based on . . . race (black) and sex (female)," which "made her feel harassed and intimidated to return to work."[21]  She opined that actions were taken by her supervisors "as another means of harassment," and that certain of the actions constituted "differential treatment."[22]

The EEO Counselor informed plaintiff by letter dated May 2, 2006, that she was "entitled to file a discrimination complaint based on race, reprisal, and/or sex."[23]  Plaintiff filed an "Equal Employment Opportunity Complaint" on May 11, 2006.[24]  The complaint form contained the subtitle "Complaint of Discrimination Because of Race, Color, Religion, Sex, National Origin, Age, and/or Physical Disability, or Reprisal."[25]  Plaintiff checked boxes on the complaint form to indicate that she had been discriminated against on the basis of race, sex, and reprisal.[26]  Plaintiff was represented by counsel in filing her second EEO complaint.[27]

TVA sent plaintiff a letter on May 30, 2006, acknowledging acceptance of her

---

[20]*Id.* at 2, 4.

[21]*Id.* at 4.

[22]*Id.*

[23]Sneed Affidavit, Attachment J (May 2, 2006 letter), at 1.

[24]Sneed Affidavit, at Attachment L.

[25]*Id.* at 1.

[26]*Id.*

[27]Sneed Affidavit, at ¶ 29.

-8-

second EEO complaint.[28]  The letter stated that

the issues presented for investigation and a final decision on the merits are Ms. Sneed's claims that she was subjected to harassment (hostile environment) in her employment as a Custodian at Colbert Fossil Plant because of:

1.   race (Black), sex (female), and reprisal (current equal employment opportunity [EEO] participation) when management denied her request for sick leave on April 3, 2006 and annual leave April 4-7, 2006;

2.   reprisal (current EEO participation) when management questioned her about her grandmother's death on or about April 5, 2006;

3.   reprisal (current EEO participation) when she was requested to clean the large utility room or the Control Building on or about April 10, 2006;

4.   race (Black) and reprisal (current EEO participation) when she was accused of not cleaning a work area on or about May 5, 2006;

5.   race (Black) and reprisal (current EEO participation) when she was threatened with disciplinary action for taking sick leave on or about May 8, 2006; and

6.   race (Black) and reprisal (current EEO participation) when she was questioned about the use of her mop bucket, work materials, and supplies on or about May 25, 2006.[29]

On June 27, 2006 — before TVA issued a decision on plaintiff's second EEO

---

[28]Sneed Affidavit, Attachment N (February 15, 2006 letter), at 1.

[29]*Id.* at 2.

complaint — plaintiff filed this lawsuit.  Her original complaint in this case asserted

claims for race discrimination and reprisal, based on the same eleven allegations TVA

had accepted for review in conjunction with her first internal complaint.[30]

TVA issued an administrative decision on plaintiff's second EEO complaint

on October 18, 2006.[31]  In the administrative opinion, TVA stated that, during

plaintiff's initial contact with the EEO office, she complained of "*harassment* (hostile

environment type)."[32]  The opinion then noted that plaintiff later "filed a formal

complaint of *discrimination*."[33]  TVA stated that the issue before it was whether

plaintiff had been "subjected to *harassment* (hostile environment)" as a result of her

supervisors' alleged actions.[34]  TVA found that plaintiff's allegations were

insufficient to support a claim upon which relief could be granted, and it

recommended that no corrective action be taken.[35]  That decision was "the final action

of the Tennessee Valley Authority on [plaintiff's second] complaint of

discrimination."[36]  TVA notified plaintiff of her appeal rights, including either: (1)

filing a Notice of Appeal with the Office of Federal Operations at the Equal

---

[30]*See* doc. no. 1 (Complaint).

[31]Sneed Affidavit, at Attachment N.

[32]*Id.* at 1 (emphasis supplied).

[33]*Id.* (emphasis supplied).

[34]*Id.* at 1-2 (emphasis supplied).

[35]*Id.* at 14-15.

[36]*Id.* at 16.

Employment Opportunity Commission ("EEOC") within thirty days; or (2) filing a civil action in an appropriate United States District Court within ninety days.[37]

Plaintiff apparently chose not to file a Notice of Appeal with the EEOC. Instead, she amended the complaint she had previously filed in this case to add claims based upon the allegations in the second administrative complaint she had filed with TVA.[38] She later amended her judicial complaint a second time to correct a typographical error in the first amended complaint.[39] Plaintiff's second amended complaint before this court states the following claims:

COUNT I

Race Discrimination

14. The adverse actions taken against Plaintiff were the result of wrongful race discrimination.

15. As a proximate result and consequence of said wrongful actions, Plaintiff has been damaged.

---

[37]*Id.*

[38]*See* doc. no. 10 (Amended Complaint).

[39]*See* doc. no. 22 (order granting leave to amend complaint); doc. no. 23 (Second Amended Complaint). Count Four of plaintiff's Amended Complaint was entitled "Racially Hostile Work Environment," but the first sentence of Count Four states that plaintiff was subjected to *sex* discrimination. *See* doc. no. 10, at ¶ 23. In its summary judgment brief, TVA argued that Count Four should be dismissed for failure to state a claim upon which relief could be granted because *sex-based* discrimination cannot support a claim for a *racially* hostile work environment. *See* doc. no. 16 (defendant's brief), at 16-19. Plaintiff subsequently acknowledged that the inclusion of the word "sex" in the body of Count Four of the Amended Complaint was a typographical error, and has since amended her complaint a second time to correct that error. *See* doc. no. 23. Accordingly, the court will not dismiss Count Four based solely upon the typographical error, and will instead proceed to evaluate the merits of that cause of action.

16.  Plaintiff prays for the relief set forth at the conclusion of this complaint.

## COUNT II

### Reprisal

17.  The adverse actions taken against Plaintiff were the result of wrongful reprisal.

18.  As a proximate result and consequence of said wrongful actions, Plaintiff has been damaged.

19.  Plaintiff prays for the relief set forth at the conclusion of this complaint.

## COUNT III

### Sex Discrimination

20.  The adverse actions taken against Plaintiff were the result of sex discrimination.

21.  As a proximate result and consequence of said wrongful actions, Plaintiff has been damaged.

22.  Plaintiff prays for the relief set forth at the conclusion of this complaint.

## COUNT IV

### Racially Hostile Environment

23.  The adverse actions taken against Plaintiff were the result of race discrimination.

24.  As a proximate result and consequence of said wrongful

actions, Plaintiff has been damaged.

25.  Plaintiff prays for the relief set forth at the conclusion of this complaint.[40]

## III.  DISCUSSION

**A.    Exhaustion of Administrative Remedies**

Defendant first argues that Counts One, Two, and Three of plaintiff's second amended complaint — claims for race discrimination, reprisal (or retaliation), and sex discrimination, respectively — should be dismissed because plaintiff failed to exhaust all available administrative remedies with regard to those claims.

Title VII of the Civil Rights Act of 1964, as amended, "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Services Administration,* 425 U.S. 820, 835 (1976).  "A federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action." *Crawford v. Babbitt,* 186 F.3d 1322, 1326 (11th Cir. 1999) (citing *Brown,* 425 U.S. at 832-33).

> Before an aggrieved [federal] employee may seek relief through the filing of a civil action in federal court, [Title VII] requires that he or she must first seek relief in the agency that has allegedly engaged in discrimination. *Brown v. GSA,* 425 U.S. at 832 . . . .  This requirement is not a technicality; "[r]ather, it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining

---

[40]Doc. no. 23, at 4-5.

> nondiscrimination in employment." *Kizas v. Webster,* 707 F.2d 524,
> 544 (D.C. Cir. 1983).

*Grier v. Secretary of the Army,* 799 F.2d 721, 724 (11th Cir. 1986) (bracketed

alteration in original).[41]

"In light of the purpose of the [administrative] exhaustion requirement," the

Eleventh Circuit has held "that a 'plaintiff's judicial complaint is limited by the scope

of the [administrative] investigation which can reasonably be expected to grow out

of the charge of discrimination.'" *Gregory v. Georgia Dept. of Human Resources*,

355 F.3d 1277, 1280 (11th Cir. 2004) (citing *Alexander v. Fulton County,* 207 F.3d

1303, 1332 (11th Cir. 2000); *Sanchez v. Standard Brands,* 431 F.2d 455, 460-61 (5th

Cir. 1970)).[42]

"Courts are nonetheless 'extremely reluctant to allow procedural technicalities

to bar claims brought under [Title VII]." *Gregory,* 355 F.3d at 1280 (quoting

*Sanchez*, 431 F.2d at 460-61). Thus, "the scope of an [administrative complaint]

should not be strictly interpreted." *Gregory,* 355 F.3d at 1280-81 (internal quotations

---

[41]The Eleventh Circuit has also stated, in the context of claims asserted by non-federal employees, that "[t]he purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory v. Georgia Dept. of Human Resources,* 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 929 (11th Cir. 1983)).

[42]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

omitted).[43]  Subsequent judicial claims will be allowed "if they 'amplify, clarify, or more clearly focus' the allegations" in the administrative complaint, but . . . allegations of new acts of discrimination are inappropriate." *Id.* at 1279-80 (citing *Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir. 1989)).

This court concludes that the claims for sex discrimination, race discrimination, and reprisal in the second amended complaint plaintiff filed in this case reasonably grow out of the claims she asserted in her administrative complaints.  On the form memorializing plaintiff's first contact with TVA's EEO office, boxes were checked for discrimination based upon race and reprisal.  In summarizing plaintiff's claims, the EEO officer noted alleged instances of retaliation, race discrimination, and differential treatment, in addition to allegations of harassment.  On her official complaint form, plaintiff checked the boxes for discrimination based upon race and reprisal.  When plaintiff first contacted the EEO office to lodge her second administrative complaint, the EEO Counselor checked boxes on the complaint form indicating discrimination based upon race, sex, and reprisal.  The EEO Counselor described plaintiff's allegations as including claims for reprisal, race discrimination,

---

[43]This is especially true if the claimant is not represented by counsel in filing the administrative complaint.  *See Gregory,* 355 F.3d at 1280-81.  Here, claimant was not represented by counsel when she filed her first administrative complaint, but she was represented by counsel in filing her second administrative complaint.  The court has considered those factors in evaluating plaintiff's administrative complaints.

sex discrimination, and disparate treatment, in addition to her claims for harassment. On plaintiff's second official complaint form, she checked boxes for discrimination based upon race, sex, and reprisal.

In addition to the designations that were assigned to plaintiff's administrative claims, the facts underlying plaintiff's administrative allegations — including alleged disparate treatment from her supervisors based upon race, sex, and reprisal; demotion based upon race; disparate discipline based upon race and reprisal; and disparate denial of paid leave based upon race, sex, and reprisal — also suggest race-, sex-, and retaliation-based claims.  At the very least, TVA's investigation into these alleged incidents should have led it to consider facts relevant to race discrimination, sex discrimination, and retaliation claims.  Further, plaintiff did not allege any new facts to support her claims in this action that were not raised during the administrative proceedings.  In fact, her second amended complaint contains *verbatim* the factual allegations accepted by TVA in conjunction with both of her administrative complaints.  *Compare Gregory,* 355 F.3d at 1280 (rejecting a failure to exhaust argument when the facts alleged in the plaintiff's EEOC charge "could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination"); *Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir. 1985) (holding that investigation of

allegations in an administrative complaint about excluding African-Americans from "training and development and opportunities for advancements" would reasonably extend to facts regarding discriminatory testing, when employees became eligible for promotions only by scoring well on the tests) *with Ramon v. AT & T Broadband,* 195 Fed. Appx. 860, 865-66 (11th Cir. 2006) (holding that administrative remedies had not been exhausted on a plaintiff's retaliation and hostile work environment claims because she did not allege any facts in her EEOC charge that would reasonably lead to an investigation of those claims); *Hillemann v. Univ. of Central Florida,* 167 Fed. Appx. 747, 749 (11th Cir. 2006) (holding that all claims other than age discrimination claim were barred for failure to exhaust remedies because the "EEOC charge was silent about race, sex, retaliation and Title VII" and the EEOC "could not reasonably be expected to investigate race and sex discrimination or retaliation when the charge form presented no indication that such considerations might have played a role in [the defendant's] failure to hire Plaintiff").

It is true that TVA's February 15, 2006 letter stated that plaintiff's administrative complaint raised "claims that [she was] subjected to harassment (non-sexual)," and did not explicitly state that any other claims were included. Even so, it is not the administrative agency's *response* to an employee's claim that is dispositive of the scope of a later judicial complaint, but the content of the claim

-17-

itself.   Plaintiff's administrative complaints make clear allegations of race discrimination, sex discrimination, and retaliation.  TVA's later construction of those allegations as encompassing only harassment claims is not sufficient to bar all non-harassment-based causes of action in this case for failure to exhaust administrative remedies.  *See, e.g., Gregory,* 355 F.3d at 1280-81.

Finally, TVA argues that plaintiff failed to exhaust all available administrative remedies because she did not challenge TVA's characterization of her administrative complaint as encompassing only harassment claims by appealing to the EEOC, or by taking any other action.  The court again emphasizes that TVA's characterization of plaintiff's administrative claims does not dictate the permissible scope of her judicial complaint.  Additionally, nothing in the record indicates that plaintiff was informed of her right to challenge TVA's acceptance of her complaints, or even that TVA would have considered such a challenge.  Finally, plaintiff cannot be faulted for failing to appeal to the EEOC, because no such appeal was required.  She could choose *either* to appeal to the EEOC, *or* to file a lawsuit in United States District Court.  She chose to file the lawsuit, thereby pursuing one of the two remedies that were next available to her.

Based on all of the foregoing, the court concludes that plaintiff did not fail to exhaust her administrative remedies with regard to her claims for race discrimination,

reprisal, and sex discrimination — Counts One, Two, and Three of her Second Amended Complaint.  Accordingly, defendant's motion for summary judgment will be denied as to those claims.

## B.    Plaintiff's Race-Based Hostile Work Environment Claim

TVA also argues that summary judgment should be granted on plaintiff's race-based hostile work environment claim because the evidence does not support such a claim.[44]

Plaintiff must provide proof of five elements to establish a racially-hostile work-environment claim:  *i.e.*, (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her race; (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of her employment and create a discriminatory abusive working environment; and (5) her employer is liable for the environment under a theory of either direct or vicarious liability.  *See, e.g., Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002); *Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1507 (M.D. Ala. 1994).

Plaintiff first relies upon the affidavit of Carolyn Felton, another black female employed as a Custodian with TVA, to support her claim for a racially hostile work

---

[44]TVA focuses much of its brief on arguing that the allegedly harassing incidents about which plaintiff complains did not occur.  Plaintiff maintains, however, that the incidents *did* occur. Therefore, there is a fact dispute regarding whether the incidents actually occurred, and their alleged non-occurrence cannot serve as the basis for the entry of summary judgment.

environment.  Felton states, without further explanation, "I feel that [plaintiff] was being discriminated against because of her race.  I also observed actions taken against her, which happened after she filed her initial EEO claim."[45]  This conclusory statement of Felton's "feelings" cannot serve as evidence to support a hostile work environment claim.  Felton did not describe the ways in which plaintiff was discriminated against, and she did not specify what actions have been taken against plaintiff.  *See Mathis v. Wachovia,* 509 F. Supp. 2d 1125, 1144-45 (N.D. Fla. 2007) (holding that an employee asserting a hostile work environment claim "must present concrete evidence in the form of specific facts, not just conclusory allegations and assertions") (quoting *Godoy v. Habersham Co.,* 211 Fed. Appx. 850, 854 (11th Cir. 2006) (in turn quoting *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990))).

Based on the other evidence of record, plaintiff easily establishes the first two elements of her hostile work environment claim.  As an African-American female, she belongs to a protected group.  Further, there is no reason, based on the evidence, to question that the allegedly harassing incidents were unwelcome.  The other elements, however, require closer consideration.

### 1.    Harassment based upon race

[45]Doc. no. 19 (plaintiff's evidentiary submission), Exhibit 3 (Affidavit of Carolyn Felton), at 2.

Most of the incidents about which plaintiff complains have no racial connotations whatsoever.  Plaintiff twice acknowledged in sworn testimony taken during the administrative proceedings that she did not hear any offensive, race-based comments in the workplace.[46]  She stated that the only racially offensive situation she encountered was when Jeanne Holder, her immediate supervisor and a white female, hung a poster on the wall in their office depicting a cat with its hair standing up on end and a caption that read, "Stress out my ass," and "I'm going to kill the next son of a bitch who said I looked stressed out."[47]  Plaintiff does not assert that the poster contained any race-based language or symbolism, or that Holder made any race-based comments to plaintiff related to the poster.  It is unclear how the poster could be construed as having even an implied race-based connotation, especially after considering plaintiff's explanation of why she was offended by it.  Plaintiff testified that Holder hung the poster the day after she and plaintiff had engaged in an argument at work.  She found the poster offensive because she believed that Holder had posted it just to harass her.[48]  According to plaintiff,

> Jeanne Holder has always did [sic] some type of harassment towards me,
> you know, whether it was with my car or whether it was with this picture

---

[46]Doc. no. 15 (defendant's evidentiary submission), Tab 6 (December 9, 2005 Sworn Statement of Jennifer Sneed), at 13; *id.,* Tab 15, at 43.

[47]Doc. no. 15, Tab 6, at 13; Tab 15, at 43-44.  *See also* Second Amended Complaint, at ¶ 8(5).

[48]Doc. no. 15, Tab 6, at 25.

or just something in my work area that she do [sic] if they hide my mop, my mop bucket or just constantly things all the time.[49]

This testimony indicates that Holder did not like plaintiff, and that she consequently engaged in mischievous, even mean-spirited, behavior toward plaintiff. But mean-spirited behavior is not sufficient to support a Title VII claim when there is no evidence that the behavior was motivated by a racial animus. As the Eleventh Circuit has stated in the context of a gender-based harassment claim, Title VII "is not a 'general civility code.'" *Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Thus, "[i]nnocuous statements or conduct, or boorish ones that do not relate to the [race] of the actor or of the offended party (the plaintiff), are not counted." *Gupta*, 212 F.3d at 583.

Personal conflicts between two employees also cannot serve as the basis for a Title VII claim, if they do not arise from the aggrieved employee's membership in a protected category. The Eleventh Circuit has also elucidated this principle in the context of a sex-based harassment claim, stating that "Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place. Personal animosity is not the equivalent of sex discrimination. . . . The plaintiff cannot turn a personal feud into a sex discrimination case. . . ." *Succar v. Dade County School*

---

[49]*Id.* at 14.

*Board*, 229 F.3d 1343, 1345 (11th Cir. 2000) (*per curiam*) (quoting *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) (footnote and internal quotation marks omitted)).  Regardless of the factual context in which the employees' dispute arises, the court's analysis of a Title VII harassment claim should focus "only on whether the complaining employee was targeted *because of*" her membership in a protected category.  *Succar*, 229 F.3d at 1345 (emphasis supplied).  Here, there is no evidence that Holder hung the poster of the cat to taunt plaintiff because she is an African-American.

These principles are equally relevant to most of the other incidents upon which plaintiff relies to support her harassment claim.  First, plaintiff asserts that TVA management employees allowed Holder to remain in her work area without her permission from June to September 2005.[50]  Plaintiff stated that Holder followed her closely, constantly monitoring her work, because she was angry over plaintiff's criticism of her work performance.  Only plaintiff received this close scrutiny from Holder, despite the fact that a black male employee also worked under Holder's supervision.[51]

Plaintiff also asserts that TVA management employees took no action when she

---

[50]Second Amended Complaint, at ¶ 8(3).

[51]Doc. no. 15, Tab 6, at 16-17.

-23-

reported that Holder placed a "Cat in the Hat" toy on the antenna of plaintiff's automobile on June 13, 2005.[52]  Plaintiff found the toy to be offensive because, to her, "it was like, 'Well, you're the Cat in the Hat.'"[53]  She felt that Holder was trying to imply that, because Holder got the Custodian Supervisor job and plaintiff didn't, plaintiff was like the "Cat in the Hat."[54]  She felt the incident was based upon her race "[b]ecause of [Holder's] actions that she had been doing, the picking and the harassing and the hollering and the screaming and trying to make me to be like I was mistreating her and all of that."[55]

Plaintiff also relies upon an incident that occurred on September 27 and 28, 2005, when Jeanne Holder was absent from work, and plaintiff was left to serve as the acting Custodian Supervisor in Holder's absence.  Plaintiff complains that Holder left her a note to inform her what her duties would be on the relevant days, rather than explaining the duties to plaintiff in person.[56]  Plaintiff identifies this incident as an example of how she was "reprised against" for filing an EEO complaint, and opines that Holder would do anything she could do to hurt her.[57]  Plaintiff acknowledged,

---

[52]Second Amended Complaint, at ¶ 8(4).

[53]Doc. no. 15, Tab 6, at 20.

[54]*Id.* at 21.

[55]*Id.*

[56]*See* Second Amended Complaint, at ¶ 8(7); doc. no. 15, Tab 6, at 31-34.

[57]Doc. no. 15, Tab 6, at 32.

-24-

however, that receiving word of her duties by letter did not adversely affect her work performance on the days Holder was absent.[58]

Plaintiff also states that she was accused of not cleaning part of her assigned work area on May 5, 2006.[59]  She believes the accusation was fabricated because her managers were "trying to get a case together against [her] for nothing."[60]

Next, plaintiff complains that she was threatened with disciplinary action for taking sick leave on May 8, 2006.[61]  She believes this incident was another example of how her managers were trying to "build a case to get rid of [her] for no apparent reason."[62]

Finally, plaintiff asserts that she suffered race-based harassment when Holder criticized her on May 25, 2006, for leaving her mop bucket and other work materials in the hallway, and for not having enough information about shipments of supplies.[63] She believes these criticisms were race-based because she "always" got blamed for things that Holder did.[64]  Plaintiff "knew that [Holder] was trying to provoke an argument" because Don Willis and Mike Richardson — the management employees

---

[58]*Id.*

[59]Second Amended Complaint, at ¶ 11(4).

[60]Doc. no. 15, Tab 15, at 28.

[61]Second Amended Complaint, at ¶ 11(5).

[62]Doc. no. 15, Tab 15, at 36.

[63]Second Amended Complaint, at ¶ 11(6).  *See also* doc. no. 15, Tab 15, at 36-43.

[64]Doc. no. 15, Tab 15, at 43.

at a higher level than Holder — would believe Holder and discipline plaintiff based on Holder's version of events.[65]

These incidents make it apparent that plaintiff did not get along with Holder (and *vice versa*), or with the management employees ranking above Holder. They reveal plentiful personal animosity, and perhaps even a retaliatory attitude toward plaintiff for filing an EEO complaint. But plaintiff did not file a claim for retaliation-based harassment in this case; she filed a claim for race-based harassment. There is no evidence that any of the incidents described above were the result of racial animus on the part of plaintiff's supervisors. Indeed, plaintiff acknowledged that Holder did not follow and closely scrutinize the work performance of another black employee under her supervision. With regard to some of the other incidents, plaintiff stated only that she was "reprised against," and that Holder continually picked on her and liked to provoke arguments with her so she would get in trouble. She also stated that her managers were trying to build a case against her, but acknowledges it was "for nothing" or "for no apparent reason" — not because of race discrimination. Because of their complete disconnection from any evidence of race-based animus, these incidents cannot serve as the basis for a race-based hostile work environment claim.

Plaintiff also complains of three other incidents that she believes were the

---

[65]*Id.*

result of her managers' general preference for white employees.  First, she asserts that TVA management employees took no action when she reported that Holder was insubordinate and disrespectful to her after she tried to discuss work performance issues with Holder on May 24, 2005.[66]  In the sworn statement she provided during the administrative investigation, plaintiff stated that she felt this incident was based upon her race because the white managers "always favor the White people more so than they do the Blacks."[67]  For example, the white managers "can be disrespectful towards Blacks," and white employees "can get special privileges for doing something bad."[68]

Plaintiff also argues that TVA management employees demoted her from the position of Custodian Supervisor to the position of Custodian on June 10, 2005.[69] Jeanne Holder subsequently received the position of Custodian Supervisor.  Plaintiff stated that Don Willis — her manager and a white male — "took the job" from her and gave it to Holder because he "always had a preference for White females."[70]

---

[66]Second Amended Complaint, at ¶ 8(1).

[67]Doc. no. 15, Tab 6, at 7-8.

[68]*Id.* at 8.

[69]Second Amended Complaint, at ¶ 8(2).

[70]Doc. no. 15, Tab 6, at 12.  Plaintiff also stated that Willis gave the job to Holder because he and Holder had grown up together.  *Id.* at 9.  Holder's history with Willis does not, of course, constitute evidence of a race-based animus.

The court also notes that it is not evaluating whether the alleged demotion could form the basis of a race-based discriminatory treatment claim.  Defendant did not move for summary judgment on the merits of plaintiff's race discrimination claim, and therefore the merits of that claim

Finally, with regard to the incident in which Holder failed to inform plaintiff in person of her work duties, plaintiff believes that upper management tolerated Holder's actions because they "always have the White preference."[71]

Essentially, plaintiff has formed the opinion that her managers "always" treat white employees better than black employees.  Therefore, when the managers treated her in a manner that she perceived to be unfavorable during the incidents recounted above, she concluded that the treatment must have been based upon her race.  Plaintiff's reasoning is speculative, and the logical leap required to connect the managers' alleged preference for white employees with their actions toward plaintiff is vast.  Absent any other evidence connecting these three incidents to her managers' alleged racial animus, the incidents cannot serve as the basis for a race-based harassment claim.  *See Mathis,* 509 F. Supp. 2d at 1144-45 (quoting *Godoy,* 211 Fed. Appx. at 854 (in turn quoting *Earley,* 907 F.2d at 1081)).

Plaintiff has pointed to only three specific incidents in which a white employee received better treatment than her.  First, plaintiff stated that TVA management employees questioned her about her whereabouts when she returned from a meeting

---

are not currently before the court.  The court is considering the alleged demotion incident only insofar as it relates to plaintiff's race-based *harassment* claim.

[71]*Id.* at 34.

with the EEO Counselor on September 20, 2005.[72]  By the time she returned from the EEO meeting, her shift already had begun.  When she returned, Mike Richarson — one of her managers and a white male — repeatedly asked her where she had been, whether she had been participating in an EEO meeting, and whether she was "on TVA time" during the hours she was away.  Richardson told plaintiff that he and the other employees had been worried about her when she did not show up for the beginning of her shift.  Although this incident seems to the court to be more retaliatory than race-based, plaintiff felt that the questioning she endured was a result of her race because Jeanne Holder — a white employee — "constantly came in late" or stayed over after her shift was completed, yet she was never questioned by a superior.[73]

Next, plaintiff complains of receiving a "Letter of Warning" for insubordination on December 2, 2005.[74]  The warning followed an altercation between plaintiff and Holder, because Holder implied that plaintiff did not properly perform her job duties.[75]  Plaintiff believes she received the Letter of Warning

---

[72]Second Amended Complaint, at ¶ 8(6).

[73]Doc. no. 15, Tab 6, at 27-28.

[74]Second Amended Complaint, at ¶ 8(8).

[75]TVA submitted a copy of the Letter of Warning.  It reads, in full, as follows:

This Letter of Warning is being issued as a result of your continued insubordinate behavior toward your supervisory team.  In the past three or four months you have shown little or no respect for your immediate supervisor, Jeanne

because of her race, relying upon "all the things that [she] had to endure."[76]

---

Holder; the O & M Manager, Don Willis; and to me, the Custodial Program Manager.  Your supervisory team has attempted to work with you to improve your attitude at work, your being a team player, and other concerns.

On August 16 and 17 and on November 4, 5, & 6, 2005, your work group, with help from the metro crew, worked overtime getting the plant ready for an upcoming event; however, you elected not to assist in this task.  On September 19, 2005, I came to Colbert to inform you that both you and Jeanne Holder would be rotating as dual-rates for 30 days each until a lead was chosen.  You informed me at that time that you didn't want to rotate anymore and went on to call me a liar.  This behavior is not acceptable.

On September 9, 2005, Don Willis and I made a trip to Colbert to talk with you and Jeanne Holder about the issues at Colbert; at this meeting you received an oral warning about your behavior.  I received a complaint on September 28, 2005, from a customer about the quality of service they were getting.  You expressed concern about Ms. Holder (your immediate supervisor) and indicated she was being unfair and picking on you regarding your work area.  I told you that Jeanne was just doing her job as your temporary supervisor which includes checking everyone's area to see that it's cleaned.  You told me and Mr. Willis that you didn't trust either one of us.  Additionally, you informed us you couldn't get along with Jeanne and went on to say it was a "woman thing."  You are failing to make any effort to be a team player.

Please note that I have received two complaints in the past two months from your customers about the quality of service they are getting; one on September 28 (as previously mentioned), and another on October 31, 2005.  You must remember that we are a service organization and our future is in the hands of our customers.

TVA employees have access to an Employee Assistance Program (EAP) designed to help them in alleviating problems that may lead to more serious disciplinary actions.  If you need more information about this program, please let me know or contact Debby Wright, Human Resources, at (865) 632-3232.

Your job is very important to TVA, FM, and the employees at Colbert Fossil Plant.  However, we can't tolerate your continued insubordination and behavior toward your supervisory team.  Therefore, your behavior will be monitored closely for the next 30 days and, if there is no improvement, further disciplinary action will be taken up to and including termination.

Doc. no. 15, Tab 21, at 1-2.

Additionally, Mona Darby, another black custodian at a different TVA facility, also received a letter of warning approximately one year before plaintiff's.[77]  Holder, on the hand, did not receive a letter of warning despite being insubordinate to plaintiff while she was under plaintiff's supervision.[78]

Finally, plaintiff complains that TVA denied her request for sick leave on April 3, 2006, and her request for annual leave on April 4-7, 2006.[79]  Plaintiff's grandmother had passed away, and she telephoned her office to leave a voice message for Jeanne Holder, requesting to be on leave the entire week.  On Tuesday of that week, however, plaintiff learned from her union steward that Mike Richardson was very upset with plaintiff because he believed plaintiff had taken off work without permission, and he consequently planned to reduce plaintiff's pay for the days she was off.  Fearing for her job, and not wishing to have her pay cut, plaintiff returned to work on Wednesday of that week.  Plaintiff believes she was denied leave based on her race because Chris Borden, a white employee in another work group, was granted two weeks of sick leave when his grandfather died earlier in the year.[80]

Evidence that co-workers outside the protected category do not receive the

---

[76]Doc. no. 15, Tab 6, at 38.

[77]*Id.* at 37.

[78]Sneed Affidavit, at ¶ 33.

[79]Second Amended Complaint, at ¶ 11(1).

[80]Doc. no. 15, Tab 15, at 3-11.

same allegedly harassing treatment as the plaintiff *can* support a hostile work environment claim.  *See Mendoza v. Borden, Inc.*, 195 F.3d 1238 1254 (11th Cir. 1999) (Edmondson, J., concurring) ("[W]hen the sexual content of a supervisor's conduct is not obvious, a plaintiff asserting a claim of sexual discrimination in employment must present some evidence that plaintiff's coworkers, those not of plaintiff's sex, were treated differently and better.  Otherwise, Title VII's *vital* element — discrimination [*i.e.*, disparate treatment] — is read out of the statute." (emphasis in original)).  Construing plaintiff's rendition of these three remaining incidents in the light most favorable to her, the court concludes a reasonable jury could determine that the allegedly harassing treatment plaintiff received was based upon her race.

### 2.    Severe or pervasive

The requirement that the alleged harassment must be sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment contains both an objective and a subjective component.  To satisfy this element, plaintiff must show *both* that she subjectively believed the environment to be hostile or abusive, *and* that a reasonable person also would perceive it as such.  *See, e.g., Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993).

When evaluating the objective severity of offensive conduct, courts examine

the totality of circumstances, including such factors as:  (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with plaintiff's work performance.  *See, e.g., Johnson v. Booker T. Washington Broadcasting Service, Inc.,* 234 F.3d 501, 509 (11th Cir. 2000) (quoting *Mendoza,* 195 F.3d at 1246); *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir. 1995).  It is not necessary to prove each of the factors individually.  However, the factors, taken together, must reveal conduct which is so extreme that it caused a material change in the terms and conditions of plaintiff's employment and created a working environment that a reasonable person would find discriminatorily abusive.  *See, e.g., Faragher*, 524 U.S. at 788 (citations omitted).

Further, the individual statements and acts complained of must each be (or arguably be[81]) of a racial nature *before* they may be taken into account when determining whether, when considered collectively, they were sufficiently severe or pervasive to create an actionable hostile work environment.  *See Gupta*, 212 F.3d at 583.  Thus, the court may only consider the three allegedly race-based incidents — management's questioning of plaintiff's whereabouts when she returned from an EEO

---

[81]*See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 584 (11th Cir. 2000) ("We will now consider comments and behavior of [the alleged harasser] that are, *or arguably could be*, considered to be of a sexual or gender-related nature.  We doubt some of it is, but for present purposes we will assume it to be.") (emphasis supplied).

meeting, plaintiff's receipt of a letter of warning, and TVA's denial of plaintiff's requests for sick leave and annual leave — in determining whether the "severe or pervasive" element has been met.

Plaintiff offers no evidence that any of these incidents unreasonably interfered with her work performance. True, she did have to return to work sooner than she would have liked after her grandmother passed away, but there is no indication that her performance suffered as a result. "To show alteration of job performance, a plaintiff need not show tangible effects such as economic harm. However, the plaintiff must show some *material* alteration of job performance from a reasonable person's standpoint." *Lawrence v. Wal-Mart Stores, Inc.,* 236 F. Supp. 2d 1314, 1326 (M.D. Fla. 2002) (internal citations omitted) (emphasis supplied).

Further, the three remaining incidents cannot reasonably be considered severe, especially since they involved no race-based comments or overtly racially hostile behavior. The incidents also cannot reasonably be considered humiliating, because there is no indication that any other employee witnessed Richardson questioning plaintiff about her participation in the EEO meeting, or that other employees were aware of the alleged denial of her leave requests following her grandmother's death, or of the letter of warning she received. The situation involving denial of plaintiff's leave requests could be considered somewhat threatening, because plaintiff feared she

would be fired if she did not return to work.  The letter of warning also could be considered threatening, because it stated that plaintiff could receive further disciplinary action, up to and including termination of her employment.  Even so, the connection between any threatening behavior and plaintiff's race is tenuous.

Finally, the court must consider the frequency of the allegedly harassing incidents.  The record does not contain definitive evidence regarding the date on which plaintiff began working for TVA, the date on which she began working with Holder, or the date she began working under Holder's supervision.  It is clear, however, that plaintiff worked there from at least May 2005 — the month of the *first* allegedly harassing incident she recounted — through May 2006 — the month of the *last* allegedly harassing incident she recounted.  During that one-year period, plaintiff experienced three incidents that can reasonably be considered race-based.  Although "there is no magic number for frequency," the relevant case law indicates that three incidents over a one-year time frame should not be considered "pervasive." *Lawrence,* 236 F. Supp. 2d at 1325 (citing *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002)).  *Compare Miller,* 277 F.3d at 1276 (holding that verbal ethnic slurs uttered by a co-employee "three to four times a day," throughout the approximately one-month period plaintiff worked with the employee, were sufficiently frequent) *and Johnson,* 234 F.3d at 509 (holding that "roughly fifteen

separate instances of harassment over the course of four months" was sufficiently frequent) *with Mendoza,* 195 F.3d at 1248-49 (holding that four incidents over an eleven-month period were insufficiently frequent*), Shepherd v. Comptroller of Public Accounts of Texas,* 168 F.3d 871, 872-75 (5th Cir. 1999) (holding that "several" incidents over a two-year period were insufficient), *and Baskerville v. Culligan International Co.,* 50 F.3d 428, 430 (7th Cir. 1995) (holding that nine instances of offensive behavior over seven months were insufficient).

Considering the totality of the circumstances, the court finds that the three race-based incidents plaintiff endured were neither sufficiently severe nor pervasive to materially alter the terms and conditions of plaintiff's employment. Accordingly, summary judgment will be granted on plaintiff's race-based hostile work environment claim.

## IV.  CONCLUSION

Based on the foregoing, summary judgment will be granted on plaintiff's claim for race-based harassment. Summary judgment will be denied on plaintiff's claims for race discrimination, reprisal, and sex discrimination. An appropriate order will be entered contemporaneously herewith.

DONE this 9th day of January, 2008.

_____

United States District Judge